UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-24408-CIV-ALTONAGA/Goodman

MONICA BEAMER,

    Plaintiff,
v.

STATE OF FLORIDA, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants, State of Florida, The Florida Highway Patrol, and Bob Saintilien's Motion to Dismiss Plaintiff's Third Amended Complaint [ECF No. 21]. Plaintiff, Monica Beamer, filed a Response [ECF No. 22], to which Defendants filed a Reply [ECF No. 23]. The Court has carefully considered the Third Amended Complaint ("TAC") [ECF No. 20], the record, and the applicable law. For the following reasons, the Motion is granted as to Count II; and as to the remaining count, the case is remanded to the Circuit Court for the Eleventh Circuit in and for Miami-Dade County.

### I.    BACKGROUND

This case concerns allegations of false arrest, false imprisonment, and malicious prosecution. (*See generally* TAC). Plaintiff is an individual and resident of Miami-Dade County, Florida. (*See* TAC ¶ 6). Defendant, Bob Saintilien ("Officer Saintilien"), is an individual, resident of Florida, and an officer of the Florida Highway Patrol. (*See id.* ¶ 7). Defendant, State of Florida, is a sovereign state. (*See id.* ¶ 8). Defendant, Florida Highway Patrol, is a division of the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"). (*See id.* ¶ 9). The State of Florida operates and supervises the Florida Highway Patrol through the DHSMV. (*See id.* ¶ 10).

On February 11, 2017, in the course of his duties as a Florida Highway Patrol Trooper, Officer Saintilien conducted a crash investigation in the area of Northeast Second Avenue and Ives Dairy Road. (*See id.* ¶ 12). Plaintiff was driving on Northeast Second Avenue near its intersection with County Road when she came to a stop due to heavy traffic. (*See id.* ¶ 13). While waiting in traffic, Plaintiff observed multiple vehicles exit the traffic jam by driving in the wrong direction and making illegal U-turns. (*See id.* ¶ 14). A tow truck arrived and removed one vehicle from the traffic jam, but traffic remained at a standstill. (*See id.* ¶ 15). Some minutes later, multiple drivers including Plaintiff honked their car horns. (*See id.* ¶ 16).

Officer Saintilien approached Plaintiff's car and asked Plaintiff if she was honking her horn. (*See id.* ¶ 17). Plaintiff responded by asking Officer Saintilien "if she looked like a horn blower." (*Id.*). Officer Saintilien demanded Plaintiff's driver's license. (*See id.* ¶ 18). Plaintiff accidently handed Officer Saintilien an expired and damaged license and upon realizing her mistake, handed Officer Saintilien her current license. (*See id.* ¶ 19). Officer Saintilien ordered Plaintiff to pull over, and Plaintiff complied. (*See id.* ¶ 20). Once he returned to his vehicle, Officer Saintilien discovered Plaintiff's current license was expired. (*See id.* ¶ 21).

After waiting some time for Officer Saintilien to return, Plaintiff exited her car and walked toward him in order to apologize. (*See id.* ¶ 22). Upon seeing Plaintiff, Officer Saintilien placed his hand near his firearm and ordered Plaintiff to return to her car. (*See id.* ¶ 23). Plaintiff put her hands in the air, informed Officer Saintilien she meant no harm, and complied with his order. (*See id.* ¶ 24).

After Plaintiff returned to her car, she called the Florida Highway Patrol to speak to a supervisor to "de-escalate" Officer Saintilien's behavior. (*Id.* ¶ 25). Plaintiff also called a friend. (*See id.*). Plaintiff was speaking on the phone a small distance from her parked car when Officer

Saintilien returned. (*See id.* ¶ 26). Officer Saintilien then arrested and handcuffed Plaintiff and "dragged her to his police car." (*Id.* ¶ 27). Plaintiff was unable to keep up with Officer Saintilien's pace because she had torn ligaments in her ankle, causing her to limp after him. (*See id.* ¶ 28).

Officer Saintilien put Plaintiff in his patrol car and drove her to the Miami-Dade County Jail, the Turner Guilford Knight facility ("TGK"). (*See id.* ¶ 29). Officer Saintilien accelerated quickly, braked sharply, and abruptly changed lanes, causing Plaintiff to be knocked about the backseat. (*See id.* ¶ 30). Upon arriving at TGK, Officer Saintilien parked his car and left Plaintiff there for over three hours. (*See id.* ¶¶ 31–32). Plaintiff repeatedly asked Officer Saintilien to use the bathroom, but Officer Saintilien refused her request and instructed her to "do what you need to do." (*Id.* ¶ 31 (internal quotation marks omitted)).

Officer Saintilien then brought Plaintiff to TGK for processing. (*See id.* ¶ 32). TGK employees and/or agents of the Florida Department of Corrections took Plaintiff's vitals and determined her blood pressure was too high to allow her into TGK; they informed Plaintiff she would have to go to the hospital to receive medical treatment. (*See id.* ¶ 33). Officer Saintilien told Plaintiff if she did not calm down, he would "drive her to the hospital in a purposefully slow manner that would exacerbate [Plaintiff]'s waiting mother's distress." (*Id.* ¶ 34 (alteration added)). Plaintiff was eventually processed into TGK. (*See id.* ¶ 35). Plaintiff was released on bail sometime after. (*See id.*).

Officer Saintilien initiated a criminal proceeding against Plaintiff for: (1) resisting an officer with violence under section 843.01, Florida Statutes; (2) failure to obey a police officer under section 316.072(3), Florida Statutes; (3) knowingly driving with a suspended license under section 322.34(2)(a), Florida Statutes; (4) unreasonably loud horn under section 316.721(2), Florida Statutes; and (5) improper lane usage under section 316.089, Florida Statutes. (*See id.* ¶

36). On March 10, 2017, the Miami-Dade State Attorney's Office took "No Action" on the felony case against Plaintiff. (*See id.* ¶ 37). On March 15, 2017, the misdemeanor, criminal traffic, and criminal traffic cases against Plaintiff were dismissed. (*See id.* ¶ 38).

The Third Amended Complaint alleges (1) malicious prosecution under Florida law against Officer Saintilien, individually, in Count I (*see id.* ¶¶ 39–54); and (2) false arrest and false imprisonment under 42 U.S.C. section 1983 against Officer Saintilien, individually, in Count II (*see id.* ¶¶ 55–68). Defendants move to dismiss the two-count Complaint, arguing (1) Officer Saintilien is entitled to qualified immunity with respect to Plaintiff's false arrest and false imprisonment claim in Count II; and (2) Plaintiff fails to state malicious prosecution claim against Officer Saintilien in Count I. (*See generally* Mot.).[1]

## II. STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added) (citing *Twombly*, 550 U.S. at 556).

---

[1] No claims are stated against or relief sought from Defendants, the State of Florida or the Florida Highway Patrol. These Defendants are therefore dismissed without prejudice without further discussion. *See Parish-Carter v. Avossa*, No. 9:16-cv-81623, 2017 WL 2720966, at *3 (S.D. Fla. June 23, 2017) (dismissing claims as to one defendant where plaintiff "has not plausibly alleged anything at all.").

4

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

### III.  DISCUSSION

#### A.  Whether Officer Saintilien is Entitled to Qualified Immunity

"Qualified immunity shields government officials who perform discretionary government functions from civil liability so long as their conduct does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Thompson v. Hall*, 426 F. App'x 855, 858 (11th Cir. 2011) (internal quotation marks omitted; quoting *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010)). To be entitled to the qualified immunity defense, a government official must demonstrate "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (citations and internal quotation marks omitted). When a defendant acts within the scope of his or her discretionary authority, the burden "shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted). "[C]ourts are urged to apply the affirmative defense of qualified immunity at

the earliest possible stage in litigation — including on a motion to dismiss." *AHE Realty Assoc., LLC v. Miami-Dade Cty., Fla.*, 320 F. Supp. 3d 1322, 1336 (S.D. Fla. 2018) (alteration added; citation omitted).

"To survive a motion to dismiss, a plaintiff 'must satisfy the two-pronged qualified-immunity standard: (1) the facts alleged in [her] complaint constitute a violation of [her] constitutional rights, and (2) the constitutional rights were 'clearly established' when the defendant committed the act complained of.'" *Cantrell v. McClure*, -- F. App'x --, 2020 WL 1061333, at *2 (11th Cir. Mar. 5, 2020) (alterations added; quoting *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014)). These requirements may be addressed "in any order." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (citation omitted). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citations and internal quotation marks omitted).

Defendants argue Officer Saintilien enjoys qualified immunity with respect to Plaintiff's claim for false arrest and false imprisonment in Count II. (*See* Mot. 8–15). Plaintiff contends Officer Saintilien is not entitled to qualified immunity because his actions "were clearly established violations of law." (Resp. 12 (capitalization and underline omitted)). Plaintiff points to three instances where Officer Saintilien allegedly violated her constitutional right to be free from an unreasonable search or seizure — when Officer Saintilien (1) ordered Plaintiff to produce her license; (2) ordered Plaintiff to pull over; and (3) arrested Plaintiff. (*See id.* 6–10).

Because the parties do not contest Officer Saintilien was acting within his discretionary authority during his interactions with Plaintiff (*see* Mot. 9; Resp. 11), it is Plaintiff's burden to show Officer Saintilien violated clearly established law. *See Cantrell*, 2020 WL 1061333, at *2.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, (2002) (citation and internal quotation marks omitted). The Eleventh Circuit has recognized "fair and clear notice is the cornerstone of the qualified immunity analysis." *De Veloz v. Miami-Dade Cty.*, 756 F. App'x 869, 880 (11th Cir. 2018) (internal quotation marks omitted; quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)).

"[F]air and clear notice can be given in various ways." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003) (alteration added; citation, italics and internal quotation marks omitted). First, a plaintiff may show "a materially similar case has already been decided." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (citations and internal quotation marks omitted). Second, a plaintiff may "point to a broader, clearly established principle that should control the novel facts of the situation." *Id.* (alterations adopted; citation and internal quotation marks omitted). Third, the plaintiff may show the "conduct involved in the case so obviously violates the constitution that prior case law is unnecessary." *Id.* (alterations adopted; citations and internal quotation marks omitted).

"The second and third methods are generally known as 'obvious clarity' cases." *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) (citing *Vinyard*, 311 F.3d at 1350–51). These methods are used

> [1] where the words of the federal statute or constitutional provision at issue are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful or [2] where the case law that does exist is so clear and broad (and not tied to particularized facts) that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.

*Id.* (alterations added; citation, internal quotation marks, and footnote call number omitted). "Cases do not often arise under the second and third methods." *Id.* (citations omitted).

7

Plaintiff argues the "obvious clarity" standard applies to the first "seizure for honking [her] horn" and the second "seizure for failing to comply with a lawful order." (Resp. 12–13 (alteration added, capitalization omitted)). As to the third "seizure and arrest for driving with a suspended license," Plaintiff argues case law makes clear Officer Saintilien lacked probable cause. (*Id.* 14 (capitalization omitted)). The Court addresses the alleged constitutional violations separately, but first reviews the applicable constitutional standards for detention and arrest.

### 1. Constitutional Standards

"The Fourth Amendment protects individuals from unreasonable search and seizure." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (citation and quotation marks omitted). A traffic stop is constitutional if it is either based on probable cause to believe a traffic violation has occurred *or* justified by reasonable, articulable suspicion the person detained has committed or is committing a crime. *See id.* (emphasis added; citing *Terry v. Ohio*, 392 U.S. 1 (1968)). To arrest an individual, "[i]t is axiomatic" probable cause is required. *Bozeman v. Pollock*, No. 14-Civ-60493, 2015 WL 11197743, at *8 (S.D. Fla. Apr. 16, 2015) (alteration added; citing *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010); other citations omitted). Otherwise, the arrest "qualifies as an unreasonable seizure that violates the Fourth Amendment." *Id.* (citations omitted).

"[O]fficers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) (alteration added; citation omitted). The "arguable probable cause" standard applies to an initial stop as well as a subsequent arrest, should one occur. *See Perry v. Greene Cty., Ga.*, 392 F. App'x 761, 764 (11th Cir. 2010) (noting that "[w]hen it comes to the initial stop and arrest, because the defendants acted with at least arguable probable cause, the defendants in

their individual capacities are entitled to qualified immunity" (alteration added)); *see also Rivers v. Diaz*, No. 8:07-cv-184, 2008 WL 876957, at *9 (M.D. Fla. Mar. 27, 2008) (noting the defendant officer had "arguable probable cause to stop [the plaintiff] . . . based on [the plaintiff's] failure to stop at a stop sign, a Florida traffic code violation." (alterations added)).

## 2. First Seizure

Plaintiff contends, "it is obvious to a police officer that it is a violation of the Fourth Amendment of the Constitution to seize a person without probable cause." (Resp. 12). According to Plaintiff, there was no probable cause to detain her after she honked her horn because (1) section 316.271(3), Florida Statutes, provides a driver shall, "when reasonably necessary . . . give audible warning with . . . her horn," and (2) it was reasonable for her to honk at motorists driving in the wrong direction. (Resp. 12 (internal quotation marks omitted; quoting Florida Statutes § 316.271(3))).[2]

Plaintiff's argument fails to persuade. Preliminarily, as discussed, the relevant standard is the more-permissive *arguable* probable cause. *See Kingsland*, 382 F.3d at 1232. Second, the relevant inquiry is not whether it was reasonable for Plaintiff to honk her horn, but whether (1) in light of broad, clearly established principles, "every objectively reasonable government official facing the circumstances would know that [Officer Saintilien]'s conduct did violate federal law," *Vinyard*, 311 F.3d at 1351 (alteration added); *Gaines*, 871 F.3d at 1209; or (2) whether the unlawfulness of Officer Saintilien's conduct under a specific statute or constitutional provision

---

[2] Although Plaintiff and Defendants agree Saintilien issued Plaintiff a citation under section 316.271(2) (*see* Mot. ¶ 24; Resp. ¶ 14); Defendants argue Officer Saintilien had probable cause to detain Plaintiff under section 316.271(3). (*See* Mot. 11). Section 316.271(2) prohibits the use of horns or warning devices emitting "an unreasonably loud or harsh sound or a whistle." *Id.* Section 316.271(3) provides a driver "shall, when reasonably necessary to ensure safe operation, give audible warning with his or her horn." *Id.*

9

was so readily apparent prior case law supporting Plaintiff's argument is unnecessary, *see Vinyard*, 311 F.3d at 1351; *Gaines*, 871 F.3d at 1209.

As to the first inquiry, Plaintiff does not attempt to point to broad, clearly established principles of case law clearly prohibiting Officer Saintilien's conduct. Plaintiff merely recites the (incorrect) probable cause standard, and states because section 316.271(3) permits honking in certain circumstances, Officer Saintilien's detention of Plaintiff "was a violation of clearly established law." (Resp. 13). This argument is perfunctory.

As to the second inquiry, this Circuit has noted "obvious clarity" cases are rare. *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (citations omitted). Stated otherwise, the Eleventh Circuit "very occasionally encounter[s] the exceptional case in which a defendant officer's acts are so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable . . . officer that what [he] was doing must be 'unreasonable' within the meaning of the Fourth Amendment." *Rodriguez v. Farrell*, 280 F.3d 1341, 1350 n.18 (11th Cir. 2002) (alterations added; citation omitted). Plaintiff appears to argue because "it is obvious that it is reasonable for a motorist to honk at vehicles . . . driving in the wrong direction" (Resp. 13 (alterations added)), detaining a driver for honking in any situation where it may be appropriate to honk is obviously a constitutional violation. The second premise does not follow automatically from the first, and certainly Plaintiff points to no case law or other authority stating it does. Given the strict standard required to establish "obvious clarity," *Gaines*, 871 F.3d at 1209, Plaintiff's conclusory assertion Officer Saintilien's "conduct was a violation of clearly established law" (Resp. 13) falls flat.

What is more, case law from this Circuit militates against Plaintiff's position. In *Lee v. Ferraro*, the Eleventh Circuit found an officer had at least arguable probable cause to detain and

10

arrest the plaintiff for honking her horn at a non-moving vehicle stalled before a green light. *See* 284 F.3d 1188, 1195 (11th Cir. 2002). The court reasoned because the plaintiff "[did] not deny that she honked her horn when the car in front of her did not move[, a] prudent law enforcement officer in [the defendant's] position could have believed that [the plaintiff] was honking her horn for a purpose other than signaling danger, thus violating the Miami–Dade County noise ordinance." *Id.* (alterations added). As in *Lee*, Plaintiff admitted to Officer Saintilien she honked her horn. (*See* TAC ¶¶ 16–17). A prudent law enforcement officer, therefore, "could have believed [Plaintiff] was honking her horn" in a manner not reasonably necessary to ensure the safe operation of her vehicle under section 316.271(3), Florida Statutes. *Lee*, 284 F.3d at 1195 (alteration added).

*Lee* concerned a summary judgment motion and a different, stringent noise ordinance, but the Court finds these distinctions immaterial given it is *Plaintiff's* burden to point to law clearly showing conduct like Officer Saintilien's to be unlawful. The case law here tends to show the opposite.

**3.   Second Seizure**

Plaintiff next alleges Officer Saintilien unlawfully seized her for failing to comply with his order to pull over and park on the side of the road.[3] Plaintiff recites the relevant statute, section 316.072, Florida Statutes, stating "[i]t is unlawful and a misdemeanor . . . for any person willfully to fail or refuse to comply with any lawful order or direction of a law enforcement officer . . . ."

---

[3] As noted, Plaintiff initially identifies three instances of unlawful seizure: when Officer Saintilien (1) ordered Plaintiff to produce her license; (2) ordered Plaintiff to pull over; and (3) arrested Plaintiff. (*See* Resp. 6–10). Yet Plaintiff's argument appears to address these instances out of order and co-mingles the second and third instances. First, Plaintiff argues the seizure for honking her horn was unlawful, second, Plaintiff argues the seizure for "failing to comply with a lawful order" (*Id.* 13 (capitalization omitted)) was unlawful, and third Plaintiff argues the seizure and arrest for driving with a suspended license was unlawful (*see id.* 12–14).

(Resp. 13 (alterations added; quoting Florida Statutes § 316.072)). According to Plaintiff, she did not technically violate the statute because she complied with the order in the first instance by pulling over, and only later left her car to speak with Officer Saintilien. (*See id.* 13–14). Plaintiff contends her actions were "obviously not a violation of [the foregoing] statute . . . [and] it is obvious that arresting a person for which there is no probable cause is a violation of that person's Fourth Amendment rights." (*Id.* 14 (alterations added)).

Again, Plaintiff mistakes the probable cause standard. And again, Plaintiff misstates the relevant inquiries. The question is not whether Plaintiff obviously violated the relevant statute, but whether it would be obvious *to an objectively reasonable officer* that detaining Plaintiff for her conduct would violate the law. *See Gaines*, 871 F.3d at 1209. Plaintiff fails to establish the same.

As with the first seizure, Plaintiff points to no broad, clearly established principle of case law prohibiting Officer Saintilien's conduct. Neither does she show Officer Saintilien's conduct was "so bad that case law is not needed to establish that the conduct cannot be lawful." *Id.* (citation, footnote call number, and internal quotations marks omitted) Plaintiff asserts "[u]nsurprisingly, Defendant[s] [are] unable to supply any case law" in support of their argument (Resp. 14 (alterations added)), but Plaintiff neglects it is *her* burden to establish Officer Saintilien violated clearly established law.

Furthermore, it is not clear Plaintiff was detained and arrested for allegedly violating Officer Saintilien's order. According to Plaintiff, the timeline of events was as follows: (1) Officer Saintilien asked Plaintiff if she honked her horn (*see* TAC ¶ 17); (2) Officer Saintilien ordered Plaintiff to show him her license (*see id.* ¶ 18); (3) Plaintiff provided Officer Saintilien her current license after initially showing him an expired license (*see id.* ¶ 19); (4) Officer Saintilien ordered Plaintiff to pull over, and Plaintiff complied (*see id.* ¶ 20); (5) Officer Saintilien returned to his

patrol car and determined her current license was suspended "after he returned to his vehicle" (*id.* ¶ 21); (6) Plaintiff exited the vehicle to apologize to Officer Saintilien (*see id.* ¶ 22); (7) Officer Saintilien ordered Plaintiff to return to her car, and Plaintiff complied (*see id.* ¶ 24); (8) Plaintiff returned to the area of her car and made two phone calls (*see id.* ¶ 25); and (9) Officer Saintilien returned to Plaintiff's car and arrested Plaintiff (*see id.* ¶ 27).

Based on the timeline, it appears Plaintiff was initially detained for honking her horn, and ultimately arrested for either allegedly violating Officer Saintilien's order, or driving with a suspended license, or both. Because, as explained in this Order, there was arguable probable cause for detaining Plaintiff in the first instance, and later arguable probable cause for arresting Plaintiff for knowingly driving with a suspended license, whether Officer Saintilien had arguable probable cause to detain Plaintiff for violating his order is immaterial. *See Lee*, 284 F.3d at 1196 (noting "when an officer makes an arrest, which is properly supported by probable cause to arrest for a *certain offense*, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest" (alteration adopted; emphasis added; citation and internal quotation marks omitted)); *United States v. Lopez-Moreno*, 420 F.3d 420, 431–32 (5th Cir. 2005) (finding probable cause for traffic stop still existed even if officer was mistaken the suspect was violating particular statute because it was objectively reasonable to believe the suspect was violating another statute).

### 4. Third Seizure and Arrest

Last, Plaintiff argues Officer Saintilien violated her constitutional rights by (1) instructing her to pull over after she provided Officer Saintilien with her license, and (2) arresting her for knowingly driving with a suspended license under section 322.34, Florida Statutes. (*See* Resp. 14–15). As to the initial detention, the Court has already found Officer Saintilien had arguable

probable cause to detain Plaintiff for violating section 316.271, Florida Statutes. Whether Officer Saintilien had arguable probable cause for ordering Plaintiff to pull over for driving with a suspended license, therefore, is immaterial. *See Lee* 284 F.3d at 1196; *Lopez-Moreno*, 420 F.3d at 431–32.[4]

Regarding the arrest, the Court finds Officer Saintilien possessed the requisite arguable probable cause. Citing *Moody v. State*, 842 So. 2d 754 (Fla. 2003), Plaintiff argues "[c]ase law is clear that, for probable cause to exist that a person is driving with a suspended license, an officer must have current knowledge that said person's license is suspended." (Resp. 14 (alteration added)). *Moody* is inapposite because it concerned a motion to suppress and does not discuss qualified immunity or the arguable probable cause standard. In any event, while a conviction for violation of section 322.34, Florida Statutes requires "the defendant's knowledge of the license suspension," *Stringfield v. State*, 254 So. 3d 1127, 1128 (Fla. 5th DCA 2018) (citation omitted), "[n]o officer has a duty to prove every element of a crime before making an arrest," *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007) (alteration added; citation omitted). In *United States v. Quintana*, 594 F. Supp. 2d 1291 (M.D. Fla. 2009), for example, the court found an officer had probable cause for arresting an individual for knowingly driving with a suspended license even though the record was "devoid of evidence [the individual] knew his license was suspended." *Id.* at 1298 (alteration added). So too here.

\*   \*   \*

---

[4] Plaintiff does not argue the arguable probable cause for the initial stop (when Plaintiff was stalled in the traffic lane) did not carry over to the second alleged detention when Officer Saintilien ordered Plaintiff to pull over. Even if she did, Plaintiff points to no case law indicating Officer Saintilien should have known detaining Plaintiff was unlawful after she initially provided him with an expired license. Neither does Plaintiff present the Court with any analysis why it would be obvious, absent case law, Officer Saintilien violated a clearly established law.

Plaintiff bears an exceedingly heavy burden to establish Officer Saintilien violated clearly established law. Plaintiff presents no relevant case law indicating Officer Saintilien should have known his conduct was unlawful, and Plaintiff does not otherwise meet the strict "obvious clarity" standard. Given the foregoing, Officer Saintilien is entitled to qualified immunity.

### B. Remand of Remaining Claim (Malicious Prosecution)

Plaintiff's remaining claim, Count I, is for malicious prosecution. (*See* TAC ¶¶ 39–54). Plaintiff brings this claim under Florida law. (*See id.*). Because no federal claim remains in this case, and the only basis for subject matter jurisdiction is the claim in Count II under 28 U.S.C. section 1331 (*see* Notice of Removal [ECF No. 1] 2), remand is appropriate. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. . . . We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." (alteration added; citations omitted)).

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** Defendants, State of Florida, The Florida Highway Patrol, and Bob Saintilien's Motion to Dismiss Plaintiff's Third Amended Complaint **[ECF No. 21]** is **GRANTED in part**. Plaintiff, Monica Beamer's claim for false arrest and false imprisonment under 42 U.S.C. section 1983 against Officer Saintilien, individually (**Count II**) is **DISMISSED**. Plaintiff's claim for malicious prosecution against Officer Saintilien, individually (**Count I**) is **REMANDED** to the Circuit Court for the Eleventh Circuit in and for Miami-Dade County. The Clerk of the Court is directed to **CLOSE** the case.

CASE NO. 19-24408-CIV-ALTONAGA/Goodman

**DONE AND ORDERED** in Miami, Florida, this 20th day of March, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record